COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FRANCISCO GONZALEZ, | § | No. 08-07-00339-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20060D04274) |
| | § | |

**O P I N I O N**

Francisco Gonzalez, Appellant, was convicted of murder and sentenced to life imprisonment. In three issues, Appellant contends the trial court abused its discretion by excluding expert testimony, charging the jury on murder, and denying him a closing argument. We affirm.

**BACKGROUND**

Appellant was a person of interest in the disappearance of Celia Rico. He was the maintenance man in Rico's apartment complex, and neighbors confirmed they dated and were often seen together. Appellant was the last person seen with Rico and later reported her missing. When El Paso police went to Rico's apartment, they found it ransacked and in disarray.

On June 29, 2006, detectives went to speak with Appellant, who had checked himself into the Trinity Recovery Center for heroin abuse. Appellant spoke openly and agreed to speak with the detectives again the following day at the police station. He later gave consent for the police to search his car, where light brown work-styled boots, a pair of jeans, a white t-shirt, and a dirty shovel were found. After speaking with Appellant again, Appellant took the detectives to a levee road and pointed to where Rico's dead body laid, partially buried. Appellant then gave a written statement,

wherein he admitted to shooting Rico twice in the head. An autopsy confirmed two gunshot wounds to the head, and laboratory analysts found gunshot residue on the t-shirt collected from Appellant's car.

**EXPERT TESTIMONY**

Appellant first contends that the trial court abused its discretion by excluding the expert testimony of Richard Overton. According to Appellant, his recent withdrawal from heroin affected his ability to converse with the detectives and give a written statement, and thus Overton's testimony should have been admitted to assist the jury in forming an opinion about whether his statement was voluntary. The State responds that the trial court properly excluded Overton's testimony since it related to the truthfulness of Appellant's statement and was neither reliable nor relevant.

*Applicable Facts*

At trial, the evidence showed that on June 29, 2006, Appellant looked gaunt, thin, and malnourished; however, he did not appear to be on drugs although he looked like someone that used drugs in the past. The following day, Appellant was well-rested and did not seem sick, under the influence of drugs, or distressed in any way. He was not confrontational or obstructive. Although heroin users can be susceptible and weak-minded, Appellant had his wits about him, was fully conscious, and wanted to talk to the detectives. Appellant acknowledged he was of sound mind and free from drugs or alcohol when his written statement was taken.

In a hearing outside the presence of the jury, Appellant proffered Overton as an expert on heroin withdrawal. Over the course of ten years, Overton, a licensed chemical dependence counselor and director of the Aliviane Inc. Methadone Clinic, saw hundreds of heroin addicts and therefore, could readily recognize the symptoms of heroin withdrawal.[1] Depending on the person and severity

---

[1] Overton, however, was not a doctor and could not determine whether a person was addicted to heroin.

of the addiction, the general symptoms of heroin withdrawal were flu-like and included sweats, chills, diarrhea, vomiting, and possibly, impaired decision-making skills. Because addicts are often given an analgesic for detoxification purposes, Overton noted that in most cases, withdrawal affects an addict's ability to concentrate and focus as the addict generally rushes to complete his tasks so that he can be medicated. Addicts withdrawing from heroin generally suffer those symptoms within the first three to five days of their last use.

Appellant's treatment records, which Overton reviewed, revealed that he was a heroin addict for twenty years, that he last used heroin on June 27, 2006, at 12:30 a.m., and that he had been using heroin for thirty days prior. Overton opined that Appellant's withdrawal symptoms would not be as severe if he was just using 30 days before; however, if he was a former addict and using again, Overton stated that Appellant's withdrawal would cause him severe discomfort on June 30, 2006, the day Appellant confessed. Overton believed Appellant probably suffered from the sweats, a runny nose, tearing ears, chills, body aches, and stomach cramps. Further, because Appellant's medical records indicated he was taking an antihypertensive medication, rather than an analgesic for detoxification, Overton believed Appellant's withdrawal was probably more difficult.

The trial court noted that Overton's opinion of how Appellant actually felt when detectives took his statement was based on a review of the medical records and not the testimony at the suppression hearing or the confession and other corroborating evidence.[2] He noted that Overton was

---

[2] At the hearing on Appellant's motion to suppress his written statement, the detectives all agreed that Appellant, at the time he was interviewed, did not seem to be under the influence of drugs or alcohol, sick, or exhibiting any symptoms of heroin withdrawal. Appellant was mentally coherent and responded appropriately to their questions. Nothing about his appearance or demeanor indicated anything out of the ordinary.

Appellant, however, testified differently. He claimed that he was in a state of detoxification, withdrawing from heroin, and was sick. Appellant claimed he had a loose stomach, the chills, and was yawning.

The trial court determined that Appellant's testimony was not credible, found Appellant voluntarily and intelligently waived his rights, and rendered the written confession admissible. The court further noted that even if Appellant was suffering from withdrawal from heroin, he was not subject to undue pressure, nor was he confused or unable to ascertain the truth from falsity when talking to the detectives.

talking in generalities and possibilities and not about whether Appellant actually went through withdrawal. The trial court did not believe Overton had enough information to render an opinion.

The trial court inquired whether Overton would testify about the truthfulness of Appellant's statement. When Appellant replied "right," the trial court remarked that Appellant could not testify through Overton, nor render any opinion as to the truthfulness of the confession because of heroin withdrawal. Appellant retorted that Overton's testimony was to his condition at the time he gave the statement and that it went to the voluntariness of his statement. The trial court, however, noted that Overton could not testify as to whether Appellant was affected by withdrawals and the extent to which his decision-making process was affected. The State objected to the testimony as Overton never examined Appellant, Overton was not a physician or nurse, and that Overton was not qualified to say what medication and dosage Appellant would have been receiving and what time he needed a follow-up dosage. The trial court found Overton's testimony speculative.

The trial court questioned whether Overton could, within reasonable certainty, state that Appellant was suffering symptoms that would have affected his ability to intelligently and knowingly understand and waive his rights. Overton could not, but he could testify that Appellant's decision-making skills could have been compromised. Overton, however, noted that he never saw Appellant in withdrawal. The State pointed out that if Overton testified, Sam Marcel, the director at Trinity, would testify as a rebuttal witness that Appellant was not suffering from any withdrawal symptoms. The trial court refused to allow Overton to testify, noting he was not qualified because he did not personally observe Appellant.

*Standard of Review*

A trial court's decision to admit or exclude expert testimony will not be disturbed absent a clear abuse of discretion. *Pena v. State*, 155 S.W.3d 238, 243 (Tex. App.–El Paso 2004, no pet.),

*citing Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). A trial court abuses his discretion only when his decision was arbitrary, unreasonable, and made without reference to any guiding rules or principles, or was so clearly wrong that it lied outside the zone of reasonable disagreement. *Pena*, 155 S.W.3d at 243-44, *citing Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

For expert testimony to be admissible, the proponent must show, by clear and convincing proof, that the testimony offered is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *See* TEX. R. EVID. 702; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In other words, the expert's knowledge and experience on a relevant issue must be shown to be beyond that of the average juror and that his testimony will help the jury understand the evidence or determine a fact issue. *See Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), *overruled on other grounds*, *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). When the jury is equally competent to form an opinion about an ultimate fact issue, or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony. *Duckett,* 797 S.W.2d at 914; *Heidelberg v. State*, 36 S.W.3d 668, 676 (Tex. App.–Houston [14th Dist.] 2001, no pet.).

Further, the trial court should exclude the expert's testimony when that testimony purports to give a direct opinion on the truthfulness of a witness. *Yount v. State*, 872 S.W.2d 706, 710 (Tex. Crim. App. 1993); *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex. App.–El Paso 2002, no pet.). This is so because such evidence does more than assist the trier of fact to understand the evidence or to determine a fact in issue; it impermissibly decides an issue for the jury. *Arzaga*, 86 S.W.3d at 776; *Perkins v. State*, 902 S.W.2d 88, 93 (Tex. App.–El Paso 1995, pet. ref'd). In short, expert opinions must aid and not supplant the jury's decision. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

*Admissibility*

The parties do not assert that Overton was not qualified to give an expert opinion on heroin withdrawal. Rather, they focus on whether Overton's testimony was reliable and relevant. We find Overton's testimony was not reliable or relevant, and that it was an impermissible opinion on the truthfulness of Appellant's confession.

Overton did not observe Appellant in his withdrawal state, nor did he review the testimony at the motion-to-suppress hearing to make a determination as to whether Appellant's statement was not voluntary because of any withdrawal symptoms he may have experienced. Overton spoke in general terms as to what drug users experience in a withdrawal state. His testimony was not based on what Appellant actually experienced when he was interviewed by the detectives. Appellant argues that Overton's testimony shows heroin withdrawal symptoms affect an intelligent, knowing, and voluntary waiver of rights, however, the trial court noted that Overton did not say that Appellant did not understand his rights or what he was waiving. Overton's testimony, therefore, was properly excluded as unreliable and irrelevant because it was not specifically based on the facts of the case. *See Rousseau v. State*, 855 S.W.2d 666, 686 (Tex. Crim. App. 1993) (holding trial court properly excluded expert testimony on eyewitness identification memory when expert had not examined any of the eyewitnesses in the case and could not state whether any of the factors would apply to the case); *Phifer v. State*, No. 2-01-238-CR, 2003 WL 22026407, at *3 (Tex. App.–Fort Worth Aug. 29, 2003, no pet.) (mem. op., not designated for publication) (holding expert testimony on whether child exhibited symptoms of a reactive detachment disorder properly excluded when doctor admitted he was not in a position to diagnose child and had never treated her).

Moreover, the evidence presented at trial did not show Appellant was suffering from the withdrawal symptoms testified to by Overton. To the contrary, the evidence showed Appellant was

coherent and wanted to talk to the detectives. Without some evidence establishing Appellant was suffering from the flu-like, withdrawal symptoms Overton alleged most addicts exhibit, Overton's generalized testimony would not assist the jury in determining whether Appellant's statement was voluntary. *See Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986); *Osby v. State*, 939 S.W.2d 787, 792 (Tex. App.–Fort Worth 1997, pet. ref'd) (cases holding expert testimony on issue of self-defense properly excluded when evidence did not raise self-defense).

Finally, to the extent Appellant attempted to offer Overton's testimony as an opinion on the truthfulness of his written statement, it was properly excluded. Overton's testimony, implicitly, if not explicitly, related to the credibility of Appellant's statement. Overton's testimony did not assist the jury in a factual determination, rather it effectively concluded that Appellant's statement was not truthful or voluntary on the generalization that he would have been suffering from heroin withdrawal. Because Overton's testimony was an impermissible opinion on the truthfulness of Appellant's written statement, a fact issue to be determined by the jury, Overton's testimony was improper. *See Yount*, 872 S.W.2d at 712 (holding Rule 702 does not permit experts to opine about a particular class of person being truthful); *Contreras v. State*, No. 08-06-00205-CR, 2009 WL 50601, at *4 (Tex. App.–El Paso Jan. 8, 2009, pet. granted) (op., not designated for publication) (finding trial court did not abuse its discretion in refusing expert testimony on how interrogation techniques affected appellant's confession when such testimony was a direct opinion as to the truthfulness of the confession and jury could have formed its own opinion as to whether confession was voluntary); *Wilks v. State*, No. 07-99-0089-CR, 2000 WL 290281, at *2-3 (Tex. App.–Amarillo Mar. 16, 2000, pet. ref'd) (op., not designated for publication) (finding trial court erred in allowing detective, who testified as an expert, to opine that when defendants give a statement, they make themselves look better; such testimony was an opinion about a particular class of persons being truthful and decided

a fact issue for the jury – whether appellant's statement was credible).

Finding Overton's testimony neither reliable nor relevant, and that it was an impermissible opinion on the truthfulness of Appellant's confession, we hold that the trial court did not abuse its discretion in excluding his testimony. Accordingly, Issue One is overruled.

## MURDER CHARGE

Appellant's next issue alleges that collateral estoppel barred the trial court from submitting a murder charge under Paragraph A of the indictment when the court, by granting a directed verdict as to Paragraph B of the indictment, made a previous factual determination that the State failed to prove his specific intent to cause serious bodily injury.[3] According to Appellant, because the Texas Penal Code defines serious bodily injury as bodily injury that causes death, and because the trial court determined he did not intend to cause serious bodily injury, he could not have also intended to cause death. *See* TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2009) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ"). Although Appellant attempts to invoke the doctrine of jury-charge error, his complaint is not directed towards any error in the jury charge.[4] Rather, he asserts that the jury should not have been instructed at all. In other words, Appellant's complaint is more appropriately characterized as an attack on the trial court's failure to grant his directed verdict on Paragraph A of the indictment.

*Applicable Facts*

---

[3] The indictment charged Appellant with murder in two paragraphs. Paragraph A alleged Appellant intentionally and knowingly caused the death of Rico, and Paragraph B alleged Appellant, with intent to cause serious bodily injury to Rico, committed an act clearly dangerous to human life, to wit: shooting Rico in the head with a firearm that caused her death.

[4] The jury charge submitted solely instructed the jury on murder; it did not include any lesser offenses.

After the State rested, Appellant moved for a directed verdict based on allegations that the State failed to properly identify the body as Rico, prove the jurisdiction where the murder occurred, and present sufficient evidence showing he intentionally or knowingly committed the crime. The trial court overruled the motion, but struck Paragraph B in the indictment, stating that he did not believe the State presented evidence that Appellant intended to cause serious bodily injury. Appellant did not then move for a directed verdict under Paragraph A on the grounds that the trial court's finding in regards to Paragraph B acted as a bar to prosecution under Paragraph A.

*Waiver*

As a prerequisite to presenting a claim for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the specific ground for the desired ruling. TEX. R. APP. P. 33.1. Even constitutional rights may be waived if the proper request, objection, or motion was not asserted in the trial court. *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

Collateral-estoppel claims are embodied within the Double Jeopardy Clause of the Fifth Amendment and concern only the relitigation of specific factual determinations. *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Murphy v. State*, 239 S.W.3d 791, 794 (Tex. Crim. App. 2007). Although the Court of Criminal Appeals has not commented on whether collateral-estoppel complaints must be preserved in the trial court before they can be asserted on appeal, the Court has refused to reach a double-jeopardy claim when the accused failed to preserve his complaint in the trial court. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). At least four of our sister courts have found that collateral-estoppel complaints were not preserved for appellate review when the accused failed to advance his argument in the trial court. *See Hughes v. State*, 16 S.W.3d 429, 431 (Tex. App.–Waco 2000, no pet.); *Murphy v. State*, 200 S.W.3d 753,

758 n.3 (Tex. App.–Texarkana 2006), *aff'd*, 239 S.W.3d 791 (Tex. Crim. App. 2007); *Chavez v. State*, No. 01-06-00357-CR, 2007 WL 4465539, at *3 (Tex. App.–Houston [1st Dist.] Dec. 20, 2007, no pet.) (mem. op., not designated for publication); *Fenstermacher v. State*, No. 03-98-00426-CR, 1999 WL 495256, at *1 (Tex. App.–Austin July 15, 1999, no pet.) (op., not designated for publication). And we note that in civil cases, collateral-estoppel complaints must be preserved in the trial court for appellate review. *See Mayes v. Stewart*, 11 S.W.3d 440, 450 (Tex. App.–Houston [14th Dist.] 2000, pet. denied); *In Interest of Striegler*, 915 S.W.2d 629, 640 (Tex. App.–Amarillo 1996, writ denied); *cf. Petta v. Rivera*, 923 S.W.2d 678, 687 (Tex. App.–Corpus Christi 1996, writ denied).

We have searched the record and cannot find any collateral-estoppel objection raised by Appellant in this case. We believe, as the Court of Criminal Appeals noted in *Gonzalez*, that Appellant, at the very least, had the burden to preserve, in some fashion, a collateral-estoppel objection at or before the time the charge was submitted to the jury. *Gonzalez*, 8 S.W.3d at 642 ("We, however, find it unnecessary to decide whether the *Stromberg* exception applies here because we agree with the Court of Appeals that appellant had the burden to 'preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury.' We, therefore, . . . hold appellant forfeited his multiple punishments double jeopardy claim."). Because Appellant did not raise his collateral-estoppel complaint in the trial court, we hold Appellant forfeited his right to make his complaint for the first time on appeal. *See* TEX. R. APP. P. 33.1; *Murphy*, 200 S.W.3d at 758 n.3; *Foster v. State,* No. 10-07-00358-CR, 2009 WL 1579005, at *3 (Tex. App.–Waco June 3, 2009, no pet. h.) (mem op., not designated for publication); *Chavez*, 2007 WL 4465539, at *3; *Fenstermacher*, 1999 WL 495256, at *1.

*Collateral Estoppel*

Moreover, even if Appellant's complaint was preserved for our review, we hold that the trial court's directed verdict on Paragraph B did not collaterally estop the court from submitting a charge on Paragraph A. Collateral estoppel, according to the Supreme Court, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443; *Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002). In other words, to raise collateral estoppel, there must be a second trial. *See Murphy*, 239 S.W.3d at 795; *Taylor*, 101 S.W.3d at 440 (the two-part test for determining whether collateral estoppel bars a subsequent prosecution is whether the facts decided in the first proceeding constituted essential elements of the offense in the second trial). Here, both theories of the offense were tried in the same proceeding. No ultimate issue of fact was decided prior to Appellant's single trial. Therefore, the doctrine of collateral estoppel is inapplicable. *See Hite v. State*, 650 S.W.2d 778, 784 n.7 (Tex. Crim. App. 1983); *Grant v. State*, 33 S.W.3d 875, 881-82 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (cases finding collateral estoppel inapplicable when there was one, not two, trials involving multiple offenses and the jury acquitted on some but convicted on others); *Ward v. State*, 938 S.W.2d 525, 528 (Tex. App.–Texarkana 1997, pet. ref'd) (finding collateral estoppel inapplicable where two counts of perjury were tried together, and the jury acquitted under one count, and convicted under the other). Appellant's second issue is overruled.

## CLOSING ARGUMENT

Appellant's final issue contends that the trial court denied his rights to due process of law by preventing him from making a closing argument at the punishment phase of the trial. The State contends Appellant's issue is not preserved for review. We agree.

*Waiver*

The right to effective assistance of counsel under the Sixth Amendment guarantees a

defendant the opportunity to make a closing argument. *See Herring v. New York*, 422 U.S. 853, 856-57, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Similarly, a defendant's right to be heard under Article 1, Section 10 of the Texas Constitution assures the defendant the right to make a closing argument. *See Ruedas v. State*, 586 S.W.2d 520, 522-23 (Tex. Crim. App. 1979). Those rights, therefore, are violated when a trial court denies a defendant the opportunity to make a closing argument. *Herring*, 422 U.S. at 857-58; *Ruedas*, 586 S.W.2d at 522-23. But those rights can also be waived when a defendant fails to object. *See* TEX. R. APP. P. 33.1 (requiring party to preserve error in trial court for review); *United States v. Martinez*, 974 F.2d 589, 590 (5th Cir. 1992); *Ruedas*, 586 S.W.2d at 522-23 (cases requiring objection to preserve denial of closing argument for appellate review); *see also Thompson v. State*, 537 S.W.2d 732, 736 (Tex. Crim. App. 1976) (constitutional error can be waived if defendant fails to object at trial).

In this case, the record reflects that after the parties rested and closed at punishment, the trial court stated that he would forego arguments from the State and defense and asked Appellant to approach the bench for sentencing. The trial court questioned whether Appellant was ready to proceed on the sentencing portion of the proceeding, and Appellant responded, "I have no objection from the defense." The court asked if Appellant had anything to say before punishment was pronounced, and Appellant stated, "No, sir." The trial court then sentenced Appellant to life imprisonment and adjourned the court. Appellant later filed a motion for new trial, but he did not complain that the trial court failed to allow him an opportunity to present a closing argument.

The record is clear that Appellant was provided with opportunities before sentencing to object to the trial court's decision to forego arguments. He also had an opportunity to raise the issue in his motion for new trial. Appellant did not do so. Appellant failed to assert his right to a closing argument in the trial court, thus he has failed to preserve the issue for our review. *See Martinez*, 974

F.2d at 592; *Kelly v. State*, 638 S.W.2d 203, 204 (Tex. App.–Dallas 1982, no pet.); *In re M.A.*, No. 08-02-00544-CV, 2004 WL 1284019, at *2 (Tex. App.–El Paso June 10, 2004, no pet.) (mem. op., not designated for publication); *Davenport v. State*, No. 01-94-00193-CR, 1995 WL 632095, at *3 (Tex. App.–Houston [1st Dist.] Oct. 26, 1995, pet. ref'd) (op., not designated for publication) (cases holding right to closing argument waived when defendant failed to object at trial). Accordingly, we overrule Appellant's third issue.

## CONCLUSION

Having overruled Appellant's three issues, we affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

November 18, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Publish)