02-11-031-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00031-CR

 

 


 
 
 Leslie Goin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 5 OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Leslie Goin appeals his conviction and sentence for felony DWI. In three
points, Goin challenges the first of two enhancement paragraphs and argues that
the trial court abused its discretion by admitting certain evidence.  We will
affirm.

II.  Background

          In
the early morning hours of December 19, 2009, Goin called Kirsten Williams, his
girlfriend, and asked her to pick him up on the square in Denton.  Williams
agreed, and she headed in that direction driving her son’s white F-150 truck.  Along
the way, Williams saw Goin walking on the street; she stopped to pick him up and
noticed that he had been drinking.[2]  Williams initially drove
Goin to his nephew’s house but then headed back to her house with Goin.  On the
way to her house, Williams and Goin stopped at a RaceTrac convenience store to purchase
a few items.  Shortly after leaving the store, Williams pulled the truck over because
Goin wanted to get out.  Goin exited the truck, and after failing to convince him
to get back inside, Williams drove to her house and went to bed.

          Williams
later awoke when she heard her son’s truck start and someone drive it away.  She
ran to the door, saw the truck traveling down the street towards a dead end and
then back by her house, and noticed that her mailbox had been knocked down.  Williams
called 911 and identified Goin as the person driving the truck.  She then spoke
on the phone with Goin, who said that he was at the RaceTrac and that he would
get a ride to her house.

          Deputy
Jason Daniels arrived at Williams’s house and spoke with her before going to
the RaceTrac, where her son’s truck was located.  Meanwhile, Goin arrived at Williams’s
house—someone had given him a ride—and Goin and Williams were arguing when
Deputy Daniels returned.  Deputy Daniels noticed an odor of alcohol on Goin’s
breath and that he was slurring his speech, and Goin told Deputy Daniels that
he had driven the truck to the RaceTrac and that he had been drinking.  Deputy
Daniels administered three field sobriety tests to Goin (the horizontal gaze
nystagmus test, the walk-and-turn test, and the one-legged stand test), formed
the opinion that Goin was intoxicated, and arrested him.  After Goin refused to
provide a breath or blood specimen for testing, Deputy Daniels transported Goin
to Denton Regional Medical Center, where Tanaka Powell, a phlebotomist,
performed a mandatory blood draw.  A chemist with the Texas Department of
Public Safety tested the blood sample, which contained .20 grams of alcohol per
100 milliliters of blood, more than twice the legal limit.

          At
trial, Jason Hawke testified that he was the overnight manager at the RaceTrac
on December 19, 2009.  Hawke observed Goin and a “female companion” engage
in a verbal altercation in the parking lot, and they were driving a white
pickup truck.  After the two left, Goin returned to the RaceTrac with the white
truck,[3] and Goin argued with a
person on the other end of the store phone that he used.  Hawke noticed an
“obvious smell of alcohol and unsteadiness on his feet” about Goin.

          The
jury convicted Goin of felony DWI, and the trial court found true two
enhancement paragraphs alleging prior felony convictions and sentenced Goin to
fifty-four years’ confinement.  Goin appeals.

III.  First Enhancement Allegation

          In
his first point, Goin argues that the State “was clearly barred from seeking an
enhancement pursuant to the first enhancement paragraph” because the conviction
alleged in the first enhancement paragraph of the indictment was barred by
collateral estoppel.  In his second point, Goin argues that a fatal variance
existed between the allegation contained in the first enhancement paragraph,
which alleged that the conviction occurred in Dallas County, and the evidence
at trial, which showed that the same conviction actually occurred in Grayson
County.  The State responds that Goin forfeited his collateral estoppel
argument and that the variance was not material.

          A.      The
Record

          The
first enhancement paragraph alleged in the indictment states the following:

          And it is
further presented in and to said Court that before the commission of the
offense alleged above, on the 21st day of September, 1988, in cause number
36518, in Dallas County, Texas, the defendant was convicted of the
felony offense of Burglary of a Habitation in the 59th Judicial District
Court[.]  [Emphasis added.]

 

          At
punishment, the State questioned Brent Robbins, an investigator with the Denton
County District Attorney’s Office, about State’s Exhibit 18, a pen packet
containing the 1988 judgment on Goin’s plea of guilty to burglary of a habitation
in cause number 36518.  The judgment identifies that the conviction is from the
“59th Judicial District Court of Grayson County,” not Dallas County. 
[Emphasis added.]

          Robbins
also testified about State’s Exhibit 19, a pen packet containing the 1998
judgment on Goin’s plea of guilty to DWI in cause F-97-0380-D in the 362nd
Judicial District Court of Denton County, the second prior felony conviction that
the State alleged in the indictment for enhancement purposes.  For “Findings On
Enhancement,” the judgment states, “Not True,” with “Not” written by hand.  Further,
the portion of the judgment relating to the enhancement paragraph is struck
through, and the judge’s initials are beside it.  The prior conviction that the
State had attempted to use in that case for enhancement purposes was Goin’s
1988 conviction for burglary of a habitation.

          The
following exchange took place during Goin’s cross-examination of Robbins,

          Q.      (By
[defense counsel])  Officer, you understand that the packet that you have isn’t
even for an offense out of Dallas County, Texas, right?

 

          A.      When
you say the packet that I have, what are you referring to?

 

          Q.      State’s
Exhibit 18.

          A.      Yes,
as I stated this number 36518 is in the 59th Judicial District Court of Grayson
County, Texas.

 

          Q.      So
that doesn’t match your indictment, does it?

          A.      As
far as the notice to you or as far as the county being listed?

 

          Q.      Well,
I don’t -- I didn’t see this until today, so --

                             [State]: 
Objection, sidebar.

                             THE
COURT:  I’ll sustain the objection.

          Q.      Officer -- Officer,
my point is that the indictment alleges that the burglary of a habitation is a
conviction out of the 59th Judicial District Court in Dallas County, Texas. 
You understand that?

 

          A.      I
understand that, yes.

          Q.      You
understand that’s not what this packet is for, State’s Exhibit 18?

 

          A.      I
understand that the county is not correct, yes, ma’am.

 

          Q.      You
understand not only is the county not correct, but the actual court isn’t even
correct?

 

          A.      Insomuch
as there isn’t a 59th J.D.C. in Dallas, your statement is correct.

 

                             [Defense
Counsel]:  Your Honor, may we approach?

                             THE
COURT:  Sure.

                             (Discussion
at the bench off the record.)

                             THE
COURT:  We’ll take a short recess.

                             (Break
taken.)

                             THE
COURT:  State, present and ready?

                             [State]:  State’s
present and ready.

                             THE
COURT:  Defense, present and ready?

                             [Defense
Counsel]:  Yes, Your Honor.

                    THE
COURT:  All right.  What we’ll do is recess this matter until
Thursday, January the 13th at 1:30 p.m.  Also, I want each side to submit a
brief to me no later than noon time on Wednesday, January the 12th.  Everybody
understand that?

 

                             [State]:  Yes,
Judge.

                             [Defense
Counsel]:  Yes.

                   THE
COURT:  We’ll continue the punishment hearing after that.

 

          The
record contains the briefs filed by both the State and Goin addressing the
variance between the allegation in the indictment that Goin’s 1988 conviction
occurred in Dallas County and the evidence at trial that the same conviction
occurred in Grayson County.  When the punishment hearing continued on January
13, 2011, the trial court stated that it had read the briefs submitted by the
parties and that the State’s brief was “much more persuasive,” and it proceeded
with the punishment hearing without striking or taking any other action in
regard to the first enhancement paragraph.

          When
Goin resumed cross-examining Robbins, the following exchange took place:

          Q.      I’ll
show you what’s been marked as State’s Exhibit 18.  That includes the judgment
from Grayson County; is that correct?

 

                   A.      Yes,
it does.

          Q.      Mr.
Robbins, on that judgment, do you see a fingerprint anywhere on that judgment?

 

                   A.      Not
on the Grayson County judgment itself, no.

                             . . . .

          Q.      Are
you aware that previously when this paragraph has been tried to use [sic], it’s
been struck based on the lack of fingerprint evidence?

 

                             [State]:  Objection,
relevance.

                             THE
COURT:  I’ll sustain the objection.

                   [Defense
Counsel]:  Your Honor, at this time, we’d move to strike that
paragraph, once again.  The fact that the judgment has no fingerprints on it
and the 362nd District Court has previously struck that paragraph; therefore,
I’m leaving the jurisdiction for this court to have jurisdiction over that
enhancement paragraph.

 

                             THE
COURT:  Response?

                   [State]:  Enhancement
paragraphs are stricken all the time as a matter of plea agreement or any
number of reasons.  We have no way of knowing why back in 1988, Judge White
decided -- or I guess Michael Moore, Earl Dobson or whoever the defense
attorney was, came to the judgment without that enhancement paragraph.  But this
Court certainly is not bound by that.  You’ve heard testimony from Officer --
Investigator Robbins that the [p]en-pack contains the fingerprints of the
defendant in this case, and you are not bound by a previous court’s decision or
a previous head of attorneys’ plea agreements in order to find this true.

 

                   All
you’d have to do is be satisfied beyond a reasonable doubt that Mr. Robbins
testified truthfully when he said he did the analysis, and it’s the same Leslie
Wayne Goin from that pen pack as on trial here today.

 

                             THE
COURT:  I’ll deny your request.

                   [Defense
Counsel]:  If I may, just for record purposes, there is case law,
Young v. State, states once a paragraph is struck, the Court does lose
jurisdiction.  And since the previous court was the 362nd District Court here
in Denton County, and this court is sitting as the 362nd here in County
Criminal Court No. 5, we are arguing that since the court lost jurisdiction at
that point when the paragraph was struck, that it no longer has jurisdiction
over that paragraph now.

 

          And I’d
just like to offer that for the record.

 

                   THE
COURT:  That’s fine.

          B.      Collateral
Estoppel

          Goin
argues that collateral estoppel barred the State’s use of cause 36518 for
enhancement because there was a finding of “Not True” as to that same cause back
in 1998 when it was used for enhancement purposes in cause F-97-0380-D.

          To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State,
319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address
the merits of an issue that has not been preserved for appeal.  Wilson v.
State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010).

          Goin’s
“jurisdiction” objection was not sufficiently specific to raise a collateral
estoppel challenge, nor was a collateral estoppel challenge apparent from the
context of Goin’s objection.  Indeed, the case that Goin referred to when
moving to strike the enhancement paragraph appears to be Young v. State,
No. 05-92-00317-CR, 1993 WL 321484, at *2 (Tex. App.—Dallas Aug. 18, 1993, no
pet.) (not designated for publication).  In that case, the appellate court
reasoned that “[i]f a trial judge dismisses one or more enhancement paragraphs
from the indictment, the trial court loses jurisdiction over the paragraphs
dismissed and cannot reinstate them.”  Id. at *3.  Goin’s argument at
trial mirrored this reasoning.  Young, however, did not address, or even
mention, collateral estoppel.  See id. at *1–5.  Because the legal basis
of Goin’s appellate argument varies from the complaint that he raised at trial,
he forfeited this point for appellate review.  See Tex. R. App. P.
33.1(a)(1); Lovill, 319 S.W.3d at 691–92; Gonzalez v. State, 301
S.W.3d 393, 399–400 (Tex. App.—El Paso 2009, pet. ref’d) (holding that
appellant failed to preserve collateral estoppel argument for appellate review
and listing opinions holding similarly).  We overrule Goin’s first point.

          C.      Variance

          Goin
argues that the variance between the indictment’s allegation that cause 36518 occurred
in Dallas County and the evidence at punishment that the same cause occurred in
Grayson County was material, led him to the wrong location of the conviction
when preparing for trial, and surprised him.

          Generally,
a variance between the indictment and evidence at trial is fatal to a
conviction.  Stevens v. State, 891 S.W.2d 649, 650 (Tex. Crim. App.
1995).  This is because due process guarantees the defendant notice of the
charges against him.  Id.  But not every variance between the evidence
at trial and the indictment is fatal.  Id.  Only a material variance is
fatal.  Id.  For a variance to be material, it must mislead the party to
his prejudice.  Id.  Absent proof of prejudicial surprise, a variance between
the allegations in the indictment and the proof presented at trial is not material
and fatal and, therefore, does not require reversal.  Freda v. State,
704 S.W.2d 41, 42–43 (Tex. Crim. App. 1986).

          Regarding
enhancements, it is well settled that it is not necessary to allege prior
convictions for purposes of enhancement with the same particularity that must
be used in charging the primary offense.  Id. at 42; Rooks v. State,
576 S.W.2d 615, 617 (Tex. Crim. App. 1978) (acknowledging that “the trend in
the law regarding allegations of prior convictions has generally been toward a
relaxation of the rigid rules of the past”).  In fact, prior convictions used
as enhancements must be pleaded in some form, but they need not be pleaded in
the indictment.  Brooks v. State, 957 S.W.2d 30, 34 (Tex. Crim. App.
1997).  The accused is only entitled to a description of the judgment of former
conviction that will enable him to find the record and prepare for a trial on
the question of whether he is the convict named in the judgment.  Villescas
v. State, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (quoting Hollins v.
State, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)).  Variances between an
enhancement allegation and the proof in regard to cause numbers, courts, and
dates of conviction have all been held to be immaterial.  Freda, 704
S.W.2d at 42–43.

          Here,
Goin had actual pretrial notice that the State intended to use the prior conviction
in cause 36518 to enhance his punishment.  This notice included (1) the
date of the offense, (2) the cause number, (3) the nature of offense,
and (4) the convicting court.  Notwithstanding the incorrect county, this
description was specific enough to enable Goin to locate the record and prepare
for trial.  See Cole v. State, 611 S.W.2d 79, 80 (Tex. Crim. App. [Panel
Op.] 1981) (“In alleging a prior conviction for enhancement of punishment the
allegations should include the court in which the conviction was obtained, the
time of the conviction and the nature of the offense.”).  Goin’s contention
that he was surprised by the variance is conclusory; he has not directed us to
any evidence of prejudicial surprise.  Therefore, the variance is not material
and fatal.  See Freda, 704 S.W.2d at 43.  We overrule Goin’s second
point.

IV.  Evidentiary Rulings

          In
his third point, Goin argues that the trial court abused its discretion by
admitting into evidence the blood specimen drawn after his arrest and the
results of the analysis of that specimen because Powell, a phlebotomist, was
not qualified under the transportation code to draw his blood.

          We
review a trial court’s decision to admit or exclude evidence under an abuse of
discretion standard.  Shuffield v. State, 189 S.W.3d 782, 793 (Tex.
Crim. App.), cert. denied, 549 U.S. 1056 (2006); Montgomery v. State,
810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh’g).  We reverse only
when the trial court’s decision was so clearly wrong as to fall outside the
zone of reasonable disagreement.  See Oprean v. State, 201 S.W.3d 724,
726 (Tex. Crim. App. 2006).

          Transportation
code section 724.017(a) provides in relevant part that “[o]nly a physician,
qualified technician, chemist, registered professional nurse, or licensed
vocational nurse may take a blood specimen at the request or order of a peace
officer under this chapter.”  Tex. Transp. Code Ann. § 724.017(a) (West
2011).  Because a phlebotomist is not listed among those occupations that
automatically qualify under the statute, a phlebotomist must be proven to be
“qualified” before a blood sample he or she takes satisfies the statute.  Torres
v. State, 109 S.W.3d 602, 605 (Tex App.—Fort Worth 2003, no pet.); Cavazos
v. State, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref’d). 
“The common-sense interpretation of the term ‘qualified technician’ . . . must
include a phlebotomist who a hospital or other medical facility has determined
to be qualified in the technical job of venesection or phlebotomy, i.e., the
drawing of blood.”  State v. Bingham, 921 S.W.2d 494, 496 (Tex.
App.—Waco 1996, pet. ref’d).

          Here,
Powell testified that she had been working as a phlebotomist since 1998; that
she had been trained in how to properly collect, handle, and package a blood
sample; that she was familiar with the recognized medical procedures for
drawing a blood sample; that she had drawn blood on “many” occasions; and that
she had performed a mandatory blood draw on “many” occasions.  Under similar
facts, this court has held that the trial court did not abuse its discretion by
determining that a phlebotomist was qualified under section 724.017 and by
admitting the appellant’s blood test results.  See Torres, 109 S.W.3d at
605.  Accordingly, we hold that the trial court did not abuse its discretion by
determining that Powell was qualified under section 724.017 and by admitting
the complained-of evidence.  We overrule Goin’s third point.

V.  Conclusion

          Having
overruled all three of Goin’s points, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  December 15, 2011









[1]See Tex. R. App. P. 47.4.





[2]Goin also told Williams
that he had been drinking.





[3]Hawke recounted that only
Goin was in the truck and that he saw Goin get out of the driver’s side door of
the truck.