**Opinion issued March 11, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00424-CR

———————————

**JASON DUMONT HENSLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CR-0261**

---

## MEMORANDUM OPINION

Jason Dumont Hensley was convicted by a jury of the manufacture or delivery of a controlled substance in Penalty Group 2-A, namely MDMB-en-PINACA, a compound with Indazole core, methoxy dimethyl oxybutanoate, Group A, and a

carboxamide link, in an amount of 400 grams or more.[1]  After finding two enhancement paragraphs true, the trial court sentenced Hensley to 40 years' imprisonment.[2]  In his sole issue, Hensley argues that the trial court erred in admitting expert testimony on his credibility.

We affirm.

### Background

On September 23, 2021, Hitchcock Police Department Sergeant L. Garcia was monitoring traffic for infractions when he observed Hensley run a traffic light at Delaney Road and Highway 6 in Galveston County.  After initiating a traffic stop, Sergeant Garcia observed Hensley "leaning over . . . to his passenger's side" and "moving to the right," and Sergeant Garcia did not know if Hensley "was searching for something or grabbing anything."

Sergeant Garcia approached Hensley's car and Hensley told Sergeant Garcia that he did not have his driver's license with him, nor did he have insurance on the car.  Because the car was not insured, Sergeant Garcia told Hensley that he could not have someone else pick up the car and it would have to be towed.

---

[1]  *See* TEX. HEALTH & SAFETY CODE § 481.113(a) ("[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 2 or 2-A.").

[2]  *See id.* § 481.113(e).

Meanwhile, Sergeant Garcia received information from dispatch that Hensley's driver's license was not valid. Sergeant Garcia placed Hensley in custody for "driving while license invalid" (DWLI). Sergeant Garcia searched Hensley and found cash in both pockets. In his right pocket, Sergeant Garcia found a small amount of loose cash, which Sergeant Garcia believed was Hensley's personal money. In Hensley's left pocket, Sergeant Garcia found $812 in mostly $1 bills in a plastic bag.

After Sergeant Garcia placed Hensley into custody, he inventoried Hensley's car because the car was going to be towed. Sergeant Garcia observed clothing on the floorboard of the passenger side of the car, and underneath the clothing he saw several large plastic bags containing what looked and smelled like marijuana. According to Sergeant Garcia, he observed a "large amount" of this substance separated into several different bags and it looked to be "more than the usable amount for an individual person." Sergeant Garcia also collected "several individual baggies" from Hensley's car, which, according to Sergeant Garcia, were "consistent with breaking up and then selling to individual people."

Based on the large quantity of substance, the way the substance was packaged, the presence of individual baggies, and the amount of money and denomination of the bills found in a separate plastic bag in Hensley's pocket, Sergeant Garcia believed Hensley was selling and distributing drugs.

3

Sergeant Garcia distinguished the substance found in Hensley's car from CBD or hemp, which is sold legally in stores. Based on Sergeant Garcia's experience, CBD or hemp is "not going to be in bags like this and it's going to be labeled usually in a jar . . . . Nothing like this." And based on Sergeant Garcia's experience, people try to hide what they believe to be contraband or narcotics, but do not try to hide things that are legal.

Sergeant Garcia collected the bags from Hensley's car and field tested the substance at the police department, which came back positive for synthetic marijuana. Because the field test is "[m]ore of a presumption test," the evidence was later sent to the Department of Public Safety (DPS) crime lab for further testing.[3] Testing at the crime lab confirmed that the substance obtained from Hensley's car was MDMB-en-PINACA, which is a Penalty Group 2A controlled substance commonly known as a synthetic cannabinoid.[4]

---

[3] Y. Ho, a Seized Drug Section supervisor for the DPS crime lab in Houston, testified at trial that only one bag was tested at the crime lab. The crime lab's policy is to test "the highest penalty" and once the highest penalty is satisfied, the lab will not continue testing as a matter of efficiency. The highest penalty in this case would be a Penalty Group 2A compound over 400 grams. *See* TEX. HEALTH & SAFETY CODE § 481.113(e). The bag tested in this case weighed 722.44 grams.

[4] Ho testified that synthetic cannabinoids do not contain tetrahydrocannabinol (THC). They are a class of compounds designed to interact with the same receptors as THCs, but they are not the same molecule as THC.

**Admissibility of Evidence**

In his sole issue, Hensley contends that the trial court abused its discretion in overruling his objection to Sergeant Garcia's testimony that Hensley's statement to the police was not credible. Hensley argues that this testimony invaded the province of the jury by opining directly on the credibility of Hensley's statement during an investigation. He further argues that this error harmed his substantial rights, requiring reversal. The State argues that this argument is not preserved because Hensley's objection below does not comport with his arguments on appeal. Even if the argument is preserved, the State contends any error in the admission of this testimony is harmless.

## A.    Standard of Review and Applicable Law

We review a trial court's decision to admit evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). An abuse of discretion occurs if the trial court's decision falls outside the zone of reasonable disagreement. *Id.* at 83.

Evidence showing that an accused was deceptive during an investigation is relevant and admissible. *See Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). However, an expert is not permitted to give a direct opinion on the truthfulness of a witness. *See Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). This type of testimony is inadmissible "because it

does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue;' it decides an issue for the jury." *Id.* at 709 (emphasis in original) (quoting *Duckett v. State*, 797 S.W.2d 906, 910, 913 (Tex. Crim. App. 1990)). Similarly, a witness's expert opinion on the truthfulness of a criminal defendant during an investigation is also inadmissible. *See Brown v. State*, 580 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *Gonzalez v. State*, 301 S.W.3d 393, 398 (Tex. App.—El Paso 2009, pet. ref'd) (concluding that testimony of expert was impermissible opinion on truthfulness of defendant's statement).

## B.  Analysis

During Sergeant Garcia's testimony, defense counsel asked if Garcia continued his investigation at the police station. Sergeant Garcia testified that it did, and that Hensley was "Mirandized and then he had mentioned that the substance was . . . some type of an aphrodisiac or something." Sergeant Garcia also testified that Hensley stated that he purchased the substance at a store. Sergeant Garcia testified that Hensley provided a street name of the store's location and a contact number, but he did not follow up on this information.

The State then introduced a video recording of Sergeant Garcia's interview of Hensley once they arrived at the police station. After playing a portion of that video for the jury, the following exchange occurred.

> [State]:    Sergeant Garcia, we heard someone ask [Hensley], "Is that
>             CBD?" Did you hear that his response was, "No"?

[Garcia]: Yes, ma'am.

[State]: Starting State's Exhibit 12—or State's Exhibit 6 at the one minute and 23 second mark.

(State's Exhibit No. 6 continues)

[State]: Sergeant Garcia, in this video we heard [Hensley] say that he breaks that down with those baggies, right?

[Garcia]: Yes, ma'am.

[State]: And he also mentioned that that money was from cutting grass, right?

[Garcia]: That's correct.

[State]: You asked him if cutting grass, they pay you in ones. And what was his response?

[Garcia]: "Sometimes [I] go to strip clubs."

[State]: And earlier he told you that he was going to deposit that money, right?

[Garcia]: Yes, ma'am.

[State]: But now, at this point the ones were for going to the strip club?

[Garcia]: Yes.

[State]: Okay. What was your—what conclusion did you come to about [Hensley] saying, "I bought it at La Michi" (phn)—and he didn't finish and gave you a street. What was your—what conclusion did you come to after he gave you that information?

[Defense]: I'm going to object to the relevance of the officer's conclusion. I think it improperly invades the purview of the jury.

[State]: Judge, this witness has testified through his training and experience about how he came to the conclusion that

7

[Hensley] was intending to deliver this. Specifically [Hensley] saying he broke it down. So, the conclusion about what [Hensley] said is relevant in this case.

The Court: Objection is overruled.

[State]: What was your conclusion based on him telling you, "La Michi"—didn't finish and saying, "Oh, I can give you a number. I don't have a receipt." What was your conclusion from that?

[Garcia]: He's lying.

[State]: Okay. Why do you think that?

[Garcia]: Just based on—he said he broke it down. I believe he broke it down, but not for the purposes that he said.

[State]: Is the reason that you didn't continue with the investigation past him saying, "I could give you the phone number," is it because you thought he was lying?

[Garcia]: Yes, ma'am.

[State]: Is that why we also confirmed—did confirmatory testing by sending it off to DPS?

[Garcia]: Absolutely.

Hensley argues that the above testimony, specifically Sergeant Garcia's testimony that Hensley was lying about purchasing the synthetic marijuana at a store, was inadmissible opinion testimony and that the trial court abused its discretion in admitting such testimony. Assuming without deciding that Hensley properly objected to Sergeant Garcia's testimony, and thus preserved error, and that the trial court erroneously admitted Sergeant Garcia's testimony, we conclude that any error in admitting the testimony was harmless.

8

The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Accordingly, any error must be disregarded unless it affected a defendant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. If, after examining the record as a whole, the appellate court determines that the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, such error is harmless. *Id.*; *Barshaw*, 342 S.W.3d at 93.

In assessing the likelihood that the jury's decision was improperly influenced, the appellate court must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. The reviewing court may also consider the jury instruction given by the trial judge, the state's theory, defensive theories, closing arguments, voir dire, and whether the state emphasized the error. *Id.* "Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount of evidence presented that the jury could have considered in assessing the [witness's] credibility." *Id.* at 96.

9

Here, after consideration of the record as a whole, we conclude that the admission of Sergeant Garcia's testimony, that he believed Hensley was lying, was harmless. Indeed, the evidence was more than sufficient to support the jury's verdict.

Hensley was convicted of the manufacture or delivery of a controlled substance in Penalty Group 2-A, namely MDMB-en-PINACA, in an amount of 400 grams or more. *See* TEX. HEALTH & SAFETY CODE § 481.113(a), (e).[5] When Hensley was stopped by Sergeant Garcia, Hensley was the only person in the car and he stated that the car was his. During the search of Hensley's car, Sergeant Garcia discovered multiple large bags of synthetic marijuana, along with several individual plastic baggies. Hensley also possessed a large amount of cash, predominately $1 bills.

---

[5] A person commits the offense of the manufacture or delivery of a controlled substance if he knowingly possesses a controlled substance with the intent to deliver it. TEX. HEALTH & SAFETY CODE § 481.113(a). "Possession" means actual care, custody, control, or management. *Id.* § 481.002(38). The element of knowing possession requires evidence that the accused possessed the substance knowingly rather than fortuitously. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "Deliver" means to transfer, actually or constructively, a controlled substance to another. TEX. HEALTH & SAFETY CODE § 481.002(8). Intent to deliver a controlled substance can be proved by circumstantial evidence, including evidence that an accused possessed the contraband. *Mack v. State*, 859 S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Factors courts have considered include: (1) the nature of the location at which the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either use or sale); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Lewis v. State,* 664 S.W.2d 345, 349 (Tex. Crim. App. 1984); *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Sergeant Garcia testified that the amount of synthetic marijuana recovered, along with the individual baggies, indicated that it was being packaged to be sold and was not for individual use. Sergeant Garcia likewise testified that the large amount of money, the denomination of the bills, and the separation into a separate plastic bag, was, in his experience, related to selling drugs. The substance discovered in Hensley's car field tested positive for synthetic marijuana. And that substance was later confirmed in lab testing to be MDMB-en-PINACA, also known as a synthetic cannabinoid, a controlled substance in Penalty Group 2A, weighing 722.44 grams.

Although Hensley's defensive theory at trial was that he purchased the substance at a store and did not know the substance was illegal, there was ample evidence that the jury could have considered in assessing Hensley's credibility—apart from Sergeant Garcia's challenged testimony. For instance, Sergeant Garcia testified that after he stopped Hensley's car, he saw Hensley leaning over to the right, i.e., passenger side of the car, which was where the drugs were ultimately discovered underneath clothing on the floorboard. Based on Sergeant Garcia's experience, people try to hide what they believe to be contraband or narcotics, but do not try to hide things that are legal.

Sergeant Garcia also distinguished the substance found in Hensley's car from CBD or hemp, legal substances, stating that CBD or hemp is "not going to be in bags like this and it's going to be labeled usually in a jar . . . . Nothing like this." Sergeant

11

Garcia testified that the substance found in Hensley's car did not have any labels. And Hensley, in his interview at the police station, stated that the substance was not CBD. Hensley also admitted that he divided the substance into the individual baggies. All of the above testimony was introduced without objection.

Furthermore, the jury was presented with Hensley's conflicting statements about the $812 found in a plastic bag in his left pocket. During Hensley's recorded interview at the police station, Hensley stated that he received that money from cutting grass. When asked what the money was for, Hensley initially stated that he was going to deposit it at the bank. Later, he stated that the money—specifically the $1 bills—was for the strip club.

Based on all of the above, Sergeant Garcia's statement that he thought Hensley was lying when he said he bought the synthetic marijuana at the store "was only a small portion of a large amount of evidence presented that the jury could have considered in assessing [Hensley's] credibility." *See Barshaw*, 342 S.W.3d at 96.

Finally, the State did not emphasize Sergeant Garcia's testimony in closing, instead focusing on the other evidence discussed above. Additionally, both the State and defense counsel informed the jurors during voir dire that they are "the ones who decide [witnesses'] credibility . . . and how much weight to give their testimony." And the jury was properly instructed that it was the exclusive judge of witness credibility.

12

After hearing the properly admitted evidence at trial, including Sergeant Garcia's testimony and Hensley's recorded interview, the jury reasonably could have decided on its own that Hensley was not credible. *See Brown*, 580 S.W.3d at 766–67 (holding trial court's error in admitting officer's opinion testimony that appellant was not credible did not affect appellant's substantial rights because evidence was legally sufficient to support jury's finding of guilt, similar testimony was allowed without objection, there was other evidence from which jury could conclude officer did not find appellant credible, and jury was instructed that it was exclusive judge of credibility).

Accordingly, we hold that, in the context of the entire record, the trial court's admission of Sergeant Garcia's testimony regarding Hensley's credibility did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Barshaw*, 342 S.W.3d at 96; *Brown*, 580 S.W.3d at 767.

We overrule Hensley's sole issue.

## Conclusion

We thus affirm the trial court's judgment of conviction in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).