

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00031-CR

LESLIE GOIN                                                          APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Leslie Goin appeals his conviction and sentence for felony DWI. In three points, Goin challenges the first of two enhancement paragraphs and argues that the trial court abused its discretion by admitting certain evidence. We will affirm.

### II. BACKGROUND

---

[1]See Tex. R. App. P. 47.4.

In the early morning hours of December 19, 2009, Goin called Kirsten Williams, his girlfriend, and asked her to pick him up on the square in Denton. Williams agreed, and she headed in that direction driving her son's white F-150 truck. Along the way, Williams saw Goin walking on the street; she stopped to pick him up and noticed that he had been drinking.[2] Williams initially drove Goin to his nephew's house but then headed back to her house with Goin. On the way to her house, Williams and Goin stopped at a RaceTrac convenience store to purchase a few items. Shortly after leaving the store, Williams pulled the truck over because Goin wanted to get out. Goin exited the truck, and after failing to convince him to get back inside, Williams drove to her house and went to bed.

Williams later awoke when she heard her son's truck start and someone drive it away. She ran to the door, saw the truck traveling down the street towards a dead end and then back by her house, and noticed that her mailbox had been knocked down. Williams called 911 and identified Goin as the person driving the truck. She then spoke on the phone with Goin, who said that he was at the RaceTrac and that he would get a ride to her house.

Deputy Jason Daniels arrived at Williams's house and spoke with her before going to the RaceTrac, where her son's truck was located. Meanwhile, Goin arrived at Williams's house—someone had given him a ride—and Goin and Williams were arguing when Deputy Daniels returned. Deputy Daniels noticed

---

[2]Goin also told Williams that he had been drinking.

an odor of alcohol on Goin's breath and that he was slurring his speech, and Goin told Deputy Daniels that he had driven the truck to the RaceTrac and that he had been drinking. Deputy Daniels administered three field sobriety tests to Goin (the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test), formed the opinion that Goin was intoxicated, and arrested him. After Goin refused to provide a breath or blood specimen for testing, Deputy Daniels transported Goin to Denton Regional Medical Center, where Tanaka Powell, a phlebotomist, performed a mandatory blood draw. A chemist with the Texas Department of Public Safety tested the blood sample, which contained .20 grams of alcohol per 100 milliliters of blood, more than twice the legal limit.

At trial, Jason Hawke testified that he was the overnight manager at the RaceTrac on December 19, 2009. Hawke observed Goin and a "female companion" engage in a verbal altercation in the parking lot, and they were driving a white pickup truck. After the two left, Goin returned to the RaceTrac with the white truck,[3] and Goin argued with a person on the other end of the store phone that he used. Hawke noticed an "obvious smell of alcohol and unsteadiness on his feet" about Goin.

---

[3]Hawke recounted that only Goin was in the truck and that he saw Goin get out of the driver's side door of the truck.

The jury convicted Goin of felony DWI, and the trial court found true two enhancement paragraphs alleging prior felony convictions and sentenced Goin to fifty-four years' confinement. Goin appeals.

### III. FIRST ENHANCEMENT ALLEGATION

In his first point, Goin argues that the State "was clearly barred from seeking an enhancement pursuant to the first enhancement paragraph" because the conviction alleged in the first enhancement paragraph of the indictment was barred by collateral estoppel. In his second point, Goin argues that a fatal variance existed between the allegation contained in the first enhancement paragraph, which alleged that the conviction occurred in Dallas County, and the evidence at trial, which showed that the same conviction actually occurred in Grayson County. The State responds that Goin forfeited his collateral estoppel argument and that the variance was not material.

### A. The Record

The first enhancement paragraph alleged in the indictment states the following:

> And it is further presented in and to said Court that before the commission of the offense alleged above, on the 21st day of September, 1988, in cause number 36518, in *Dallas* County, Texas, the defendant was convicted of the felony offense of Burglary of a Habitation in the 59th Judicial District Court[.] [Emphasis added.]

At punishment, the State questioned Brent Robbins, an investigator with the Denton County District Attorney's Office, about State's Exhibit 18, a pen packet containing the 1988 judgment on Goin's plea of guilty to burglary of a

4

habitation in cause number 36518. The judgment identifies that the conviction is from the "59th Judicial District Court of *Grayson* County," not Dallas County. [Emphasis added.]

Robbins also testified about State's Exhibit 19, a pen packet containing the 1998 judgment on Goin's plea of guilty to DWI in cause F-97-0380-D in the 362nd Judicial District Court of Denton County, the second prior felony conviction that the State alleged in the indictment for enhancement purposes. For "Findings On Enhancement," the judgment states, "Not True," with "Not" written by hand. Further, the portion of the judgment relating to the enhancement paragraph is struck through, and the judge's initials are beside it. The prior conviction that the State had attempted to use in that case for enhancement purposes was Goin's 1988 conviction for burglary of a habitation.

The following exchange took place during Goin's cross-examination of Robbins,

> Q.    (By [defense counsel])  Officer, you understand that the packet that you have isn't even for an offense out of Dallas County, Texas, right?
>
> A.    When you say the packet that I have, what are you referring to?
>
> Q.    State's Exhibit 18.
>
> A.    Yes, as I stated this number 36518 is in the 59th Judicial District Court of Grayson County, Texas.
>
> Q.    So that doesn't match your indictment, does it?

5

A. As far as the notice to you or as far as the county being listed?

Q. Well, I don't -- I didn't see this until today, so --

[State]: Objection, sidebar.

THE COURT: I'll sustain the objection.

Q. Officer -- Officer, my point is that the indictment alleges that the burglary of a habitation is a conviction out of the 59th Judicial District Court in Dallas County, Texas. You understand that?

A. I understand that, yes.

Q. You understand that's not what this packet is for, State's Exhibit 18?

A. I understand that the county is not correct, yes, ma'am.

Q. You understand not only is the county not correct, but the actual court isn't even correct?

A. Insomuch as there isn't a 59th J.D.C. in Dallas, your statement is correct.

[Defense Counsel]: Your Honor, may we approach?

THE COURT: Sure.

(Discussion at the bench off the record.)

THE COURT: We'll take a short recess.

(Break taken.)

THE COURT: State, present and ready?

[State]: State's present and ready.

THE COURT: Defense, present and ready?

6

[Defense Counsel]: Yes, Your Honor.

THE COURT: All right. What we'll do is recess this matter until Thursday, January the 13th at 1:30 p.m. Also, I want each side to submit a brief to me no later than noon time on Wednesday, January the 12th. Everybody understand that?

[State]: Yes, Judge.

[Defense Counsel]: Yes.

THE COURT: We'll continue the punishment hearing after that.

The record contains the briefs filed by both the State and Goin addressing the variance between the allegation in the indictment that Goin's 1988 conviction occurred in Dallas County and the evidence at trial that the same conviction occurred in Grayson County. When the punishment hearing continued on January 13, 2011, the trial court stated that it had read the briefs submitted by the parties and that the State's brief was "much more persuasive," and it proceeded with the punishment hearing without striking or taking any other action in regard to the first enhancement paragraph.

When Goin resumed cross-examining Robbins, the following exchange took place:

Q. I'll show you what's been marked as State's Exhibit 18. That includes the judgment from Grayson County; is that correct?

A. Yes, it does.

Q. Mr. Robbins, on that judgment, do you see a fingerprint anywhere on that judgment?

A. Not on the Grayson County judgment itself, no.

7

. . . .

Q.    Are you aware that previously when this paragraph has been tried to use [sic], it's been struck based on the lack of fingerprint evidence?

[State]:  Objection, relevance.

THE COURT:  I'll sustain the objection.

[Defense Counsel]:  Your Honor, at this time, we'd move to strike that paragraph, once again.  The fact that the judgment has no fingerprints on it and the 362nd District Court has previously struck that paragraph; therefore, I'm leaving the jurisdiction for this court to have jurisdiction over that enhancement paragraph.

THE COURT:  Response?

[State]: Enhancement paragraphs are stricken all the time as a matter of plea agreement or any number of reasons.  We have no way of knowing why back in 1988, Judge White decided -- or I guess Michael Moore, Earl Dobson or whoever the defense attorney was, came to the judgment without that enhancement paragraph.  But this Court certainly is not bound by that.  You've heard testimony from Officer -- Investigator Robbins that the [p]en-pack contains the fingerprints of the defendant in this case, and you are not bound by a previous court's decision or a previous head of attorneys' plea agreements in order to find this true.

All you'd have to do is be satisfied beyond a reasonable doubt that Mr. Robbins testified truthfully when he said he did the analysis, and it's the same Leslie Wayne Goin from that pen pack as on trial here today.

THE COURT:  I'll deny your request.

[Defense Counsel]: If I may, just for record purposes, there is case law, Young v. State, states once a paragraph is struck, the Court does lose jurisdiction.  And since the previous court was the 362nd District Court here in Denton County, and this court is sitting as the 362nd here in County Criminal Court No. 5, we are arguing that since the court lost jurisdiction at that point when the

8

paragraph was struck, that it no longer has jurisdiction over that paragraph now.

And I'd just like to offer that for the record.

THE COURT:  That's fine.

## B.    Collateral Estoppel

Goin argues that collateral estoppel barred the State's use of cause 36518 for enhancement because there was a finding of "Not True" as to that same cause back in 1998 when it was used for enhancement purposes in cause F-97-0380-D.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address the merits of an issue that has not been preserved for appeal.  *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010).

Goin's "jurisdiction" objection was not sufficiently specific to raise a collateral estoppel challenge, nor was a collateral estoppel challenge apparent

9

from the context of Goin's objection. Indeed, the case that Goin referred to when moving to strike the enhancement paragraph appears to be *Young v. State*, No. 05-92-00317-CR, 1993 WL 321484, at \*2 (Tex. App.—Dallas Aug. 18, 1993, no pet.) (not designated for publication). In that case, the appellate court reasoned that "[i]f a trial judge dismisses one or more enhancement paragraphs from the indictment, the trial court loses jurisdiction over the paragraphs dismissed and cannot reinstate them." *Id.* at \*3. Goin's argument at trial mirrored this reasoning. *Young*, however, did not address, or even mention, collateral estoppel. *See id.* at \*1–5. Because the legal basis of Goin's appellate argument varies from the complaint that he raised at trial, he forfeited this point for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92; *Gonzalez v. State*, 301 S.W.3d 393, 399–400 (Tex. App.—El Paso 2009, pet. ref'd) (holding that appellant failed to preserve collateral estoppel argument for appellate review and listing opinions holding similarly). We overrule Goin's first point.

### C. Variance

Goin argues that the variance between the indictment's allegation that cause 36518 occurred in Dallas County and the evidence at punishment that the same cause occurred in Grayson County was material, led him to the wrong location of the conviction when preparing for trial, and surprised him.

Generally, a variance between the indictment and evidence at trial is fatal to a conviction. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995).

10

This is because due process guarantees the defendant notice of the charges against him. *Id.* But not every variance between the evidence at trial and the indictment is fatal. *Id.* Only a material variance is fatal. *Id.* For a variance to be material, it must mislead the party to his prejudice. *Id.* Absent proof of prejudicial surprise, a variance between the allegations in the indictment and the proof presented at trial is not material and fatal and, therefore, does not require reversal. *Freda v. State*, 704 S.W.2d 41, 42–43 (Tex. Crim. App. 1986).

Regarding enhancements, it is well settled that it is not necessary to allege prior convictions for purposes of enhancement with the same particularity that must be used in charging the primary offense. *Id.* at 42; *Rooks v. State*, 576 S.W.2d 615, 617 (Tex. Crim. App. 1978) (acknowledging that "the trend in the law regarding allegations of prior convictions has generally been toward a relaxation of the rigid rules of the past"). In fact, prior convictions used as enhancements must be pleaded in some form, but they need not be pleaded in the indictment. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997). The accused is only entitled to a description of the judgment of former conviction that will enable him to find the record and prepare for a trial on the question of whether he is the convict named in the judgment. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (quoting *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)). Variances between an enhancement allegation and the proof in regard to cause numbers, courts, and dates of conviction have all been held to be immaterial. *Freda*, 704 S.W.2d at 42–43.

11

Here, Goin had actual pretrial notice that the State intended to use the prior conviction in cause 36518 to enhance his punishment. This notice included (1) the date of the offense, (2) the cause number, (3) the nature of offense, and (4) the convicting court. Notwithstanding the incorrect county, this description was specific enough to enable Goin to locate the record and prepare for trial. *See Cole v. State*, 611 S.W.2d 79, 80 (Tex. Crim. App. [Panel Op.] 1981) ("In alleging a prior conviction for enhancement of punishment the allegations should include the court in which the conviction was obtained, the time of the conviction and the nature of the offense."). Goin's contention that he was surprised by the variance is conclusory; he has not directed us to any evidence of prejudicial surprise. Therefore, the variance is not material and fatal. *See Freda*, 704 S.W.2d at 43. We overrule Goin's second point.

## IV. EVIDENTIARY RULINGS

In his third point, Goin argues that the trial court abused its discretion by admitting into evidence the blood specimen drawn after his arrest and the results of the analysis of that specimen because Powell, a phlebotomist, was not qualified under the transportation code to draw his blood.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh'g). We reverse only when the trial court's decision was so clearly wrong as to fall outside the zone of

12

reasonable disagreement. *See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006).

Transportation code section 724.017(a) provides in relevant part that "[o]nly a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter." Tex. Transp. Code Ann. § 724.017(a) (West 2011). Because a phlebotomist is not listed among those occupations that automatically qualify under the statute, a phlebotomist must be proven to be "qualified" before a blood sample he or she takes satisfies the statute. *Torres v. State*, 109 S.W.3d 602, 605 (Tex App.—Fort Worth 2003, no pet.); *Cavazos v. State*, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref'd). "The common-sense interpretation of the term 'qualified technician' . . . must include a phlebotomist who a hospital or other medical facility has determined to be qualified in the technical job of venesection or phlebotomy, i.e., the drawing of blood." *State v. Bingham*, 921 S.W.2d 494, 496 (Tex. App.—Waco 1996, pet. ref'd).

Here, Powell testified that she had been working as a phlebotomist since 1998; that she had been trained in how to properly collect, handle, and package a blood sample; that she was familiar with the recognized medical procedures for drawing a blood sample; that she had drawn blood on "many" occasions; and that she had performed a mandatory blood draw on "many" occasions. Under similar facts, this court has held that the trial court did not abuse its discretion by

13

determining that a phlebotomist was qualified under section 724.017 and by admitting the appellant's blood test results. *See Torres*, 109 S.W.3d at 605. Accordingly, we hold that the trial court did not abuse its discretion by determining that Powell was qualified under section 724.017 and by admitting the complained-of evidence. We overrule Goin's third point.

## V. CONCLUSION

Having overruled all three of Goin's points, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 15, 2011